UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

**CURTIS RICHARDSON,**
        **Plaintiff,**

vs.                                                                          06-3196

**ROGER ZIMMERMAN, et al.,**
        **Defendants.**

**MEMORANDUM OPINION AND ORDER**

    Before the court is the defendants' unopposed[1] summary judgment motion [69] brought pursuant to Federal Rule of Civil Procedure Rule 56.

**Standard**

    Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

    "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events. *Johnson v. Cambridge Indus.*, Inc., 325 F.3d 892, 901 (7th Cir. 2000). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(e). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If [the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e).

    Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(e) (emphasis added). Personal knowledge

---

[1] The plaintiff's response was stricken. See the court's February 27, 2008 and September 17, 2008 text orders.

may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659.

## Background

Plaintiff, Curtis Richardson, is in the custody of the Illinois Department of Corrections (the "Department") at Lawrence Correctional Center ("Lawrence"). Plaintiffs bring this 42 U.S.C. § 1983 lawsuit against current and former prison officials for the alleged violation of Plaintiff's right to exercise his religion under the First Amendment and alleged violations of equal protection of the law under the Fourteenth Amendment. Plaintiff seeks relief in the form of compensatory and punitive damages, along with a permanent injunction. Defendants move for summary judgment on the following grounds: First, Defendants have not substantially burdened Plaintiff's observation of his religion nor have they subjected him to any actionable discrimination. Second, Plaintiff failed to exhaust his administrative remedies as to his claims against Defendants Griswold and Twaddell. Third, Defendant Zimmerman had no personal involvement in the alleged constitutional violations. Fourth, Defendants are entitled to qualified immunity. Fifth, Plaintiff is not entitled to injunctive relief because he is no longer incarcerated at Western Illinois.

## Undisputed Material Facts

1. Plaintiff was transferred from Western Illinois Correctional Center ("Western Illinois") to Lawrence on May 9, 2007. (Defs.' Ex. E; Fairless Aff., ¶ 2.) As of October 10, 2007, Plaintiff remains incarcerated at Lawrence. (Defs.' Ex. E; Fairless Aff., ¶ 2.)
2. Plaintiff is a practicing member of the African Hebrew Israelite religion. (Defs.' Ex. A; Griswold Aff., ¶ 4.)
3. A central tenet and practice of the African Hebrew Israelite religion is adherence to a vegan diet. (Defs.' Ex. A; Griswold Aff., ¶ 4.) On July 12, 2005, Defendant Twaddell recommended approval of Plaintiff's request to obtain a vegan diet in accordance with his faith. (Defs.' Ex. C; Twaddell Aff., ¶ 8.) Plaintiff was advised of the guidelines and stipulations of the vegan diet and he agreed to abide by those guidelines and stipulations. (Defs.' Ex. C; Twaddell Aff., ¶ 8.)
4. On July 13, 2005, Plaintiff was approved to receive a vegan diet in accordance with his faith. (Defs.' Ex. C; Twaddell Aff., ¶ 9.) Among other things, Plaintiff was informed that portion size and food selection would be made in accordance with the diet guidelines. (Defs.' Ex. C; Twaddell Aff., ¶ 9.)
5. A vegan diet is one in which a person does not consume any foods which come from animals or animal byproducts. (Defs.' Ex. A; Griswold Aff., ¶ 5.) Vegans cannot eat any meat, dairy products, eggs or any products made from or with any part of an animal. (Defs.' Ex. A; Griswold Aff., ¶ 5.)

6.  Defendant Griswold is the Food Service Administrator for the Department and has held this position since August 16, 2002. (Def's Ex. A; Griswold Aff., ¶ 1.) Defendant Griswold is a Licensed Dietitian Nutritionist by the State of Illinois. (Defs.' Ex. A; Griswold Aff., ¶ 1.) Defendant Griswold is also a registered dietitian by the Commission on Dietetic Registration. (Defs.' Ex. A; Griswold Aff., ¶ 1.)
7.  Defendant Fluckey has been employed as the Corrections Food Service Manager for the Department at Western Illinois since July 2001. (Defs.' Ex. B; Fluckey Aff., ¶ 1.) Defendant Fluckey is certified by the Illinois Department of Public Health Sanitation. (Defs.' Ex. B; Fluckey Aff., ¶ 1.)
8.  The vegan menus distributed to all adult facilities of the Department, including Western Illinois, are designed to ensure that recipients receive a nutritionally adequate vegan diet that offers approximately 2300-2500 calories per day. (Defs.' Ex. A; Griswold Aff., ¶ 6.) Portions and serving sizes of food items are determined by Defendant Griswold. (Defs.' Ex. B; Fluckey Aff., ¶ 8.)
9.  Individual facilities order their food through the approved State procedure and must stay within their assigned food budget. (Defs.' Ex. A; Griswold Aff., ¶ 7; Defs.' Ex. B; Fluckey Aff., ¶ 9.) The Food Service Managers at individual facilities are directed to serve the food items and portion sizes as indicated in the vegan menu. (Defs.' Ex. A; Griswold Aff., ¶ 7.) However, occasional substitutions of food items that meet necessary dietary restrictions may become necessary due to the unavailability of certain food items. (Defs.' Ex. A; Griswold Aff., ¶ 7; Defs.' Ex. B; Fluckey Aff., ¶ 5.)
10. The dietary department at Western Illinois serves approximately 1900 inmates three meals per day. (Defs.' Ex. B; Fluckey Aff., ¶ 6.)
11. Vegan meals are prepared in the kitchen by inmates under the supervision of the kitchen Food Service Supervisors and in accordance with Department rules and regulations. (Defs.' Ex. B; Fluckey Aff., ¶ 5.) Food Service Supervisors are instructed to inspect religious diet trays before service to ensure that all items or appropriate substitutes required by the menu are on the tray. (Defs.' Ex. B; Fluckey Aff., ¶ 16.)
12. There is frequent turnover in the offender workforce in the dietary department at Western Illinois and every effort is made to adequately train workers to ensure that meals are served in accordance with the menus supplied by the Food Service Administrator. (Defs.' Ex. B; Fluckey Aff., ¶ 7.)
13. Soy protein, which is low in fat and cholesterol, is a healthy alternative to meat, poultry, and other animal-based products. (Defs.' Ex. A; Griswold Aff., ¶ 8.) Dozens of controlled clinical studies show that foods rich in soy protein can have considerable value to heart health. (Defs.' Ex. A; Griswold Aff., ¶ 8.) According to the Food and Drug Administration, all foods–including soy–are complex collections of chemicals that can be beneficial for many people in many situations, but can be harmful to some people when used inappropriately. (Defs.' Ex. A; Griswold Aff., ¶ 8.) Defendant Griswold is not aware of any specific research studies regarding dangers of soy consumption and particular health issues associated with over-consumption of soy. (Defs.' Ex. A; Griswold Aff., ¶ 8.)
14. Rice milk and soy milk are non-dairy alternatives for milk. (Defs.' Ex. A; Griswold Aff., ¶ 9.)

15. For a short time during the month of July 2005, rice milk was substituted for soy milk because the soy milk had not been delivered in the normal time frame of 2-3 days. (Defs.' Ex. B; Fluckey Aff., ¶ 10.)
16. On October 14, 2005, Defendant Fluckey issued a memorandum to all Food Service Supervisors in which she informed her staff that crackers may be used as substitutes on the vegan diet trays if vegan biscuits are not available. (Defs.' Ex. B; Fluckey Aff., ¶ 11.) Crackers are appropriate substitutes for vegan biscuits. (Defs.' Ex. A; Griswold Aff., ¶ 10.) Peanut butter and peanuts are not required on a vegan diet. (Defs.' Ex. B; Fluckey Aff., ¶ 17.)
17. Plaintiff brought certain errors and omissions he believed existed in the vegan menu to Defendant Fluckey's attention. (Defs.' Ex. B; Fluckey Aff., ¶ 12.) On May 2, 2006, Defendant Fluckey brought those errors and omissions she believed held merit to the attention of Defendant Griswold and Defendant Griswold made the necessary changes to the vegan menu. (Defs.' Ex. B; Fluckey Aff., ¶ 12.) In the meantime, Defendant Fluckey corrected the errors in portion size immediately and instructed her staff to ensure that religious diet participants received the corrected portion sizes. (Defs.' Ex. B; Fluckey Aff., ¶ 12.)
18. On July 7, 2006, in response to complaints that cereal was often missing from vegan trays, Defendant Fluckey issued a memorandum to all Food Service Supervisors asking them to ensure that all menu items are present on the vegan trays. (Defs.' Ex. B; Fluckey Aff., ¶ 14.)
19. Defendant Fluckey is not personally aware of any instances where dietary staff at Western Illinois intentionally withheld portions of food items called for by the menu without providing an appropriate substitute. (Defs.' Ex. B; Fluckey Aff., ¶ 8.)
20. On February 16, 2006, Defendants Fluckey and Twaddell met with all religious diet participants at Western Illinois to address their complaints concerning administration of religious diets. (Defs.' Ex. B; Fluckey Aff., ¶ 13.) Defendant Fluckey found some merit to their complaints and, as a result, implemented changes in the manner in which trays were held and served to ensure that food was of a proper temperature and that condiments were made available to participants. (Defs.' Ex. B; Fluckey Aff., ¶ 13.) Additionally, trays taken to segregation status inmates were wrapped separately to ensure that they were isolated from spills from regular trays. (Defs.' Ex. B; Fluckey Aff., ¶ 13.)
21. Plaintiff was approved to participate in the Passover Celebration/Feast of Unleavened Bread of April 2006, and he was issued a call pass to eat with the other celebrants. (Defs.' Ex. C; Twaddell Aff., ¶ 10.) Plaintiff was informed that the only dietary modification necessary for the celebration was the addition of unleavened bread to the meal trays. (Defs.' Ex. C; Twaddell Aff., ¶ 10.)
22. Jewish inmates at Western Illinois who participated in the Passover Celebration of April 2006, were provided meals that had been donated by Rabbi Binyomin Scheiman specifically for consumption by Jewish inmates who wished to participate in the Passover Celebration. (Defs.' Ex. C; Twaddell Aff., ¶ 12. No such meals were donated for consumption by African Hebrew Israelite inmates who wished to participate in the Feast of Unleavened Bread. (Defs.' Ex. C; Twaddell Aff., ¶ 11.)

23. Defendant Zimmerman was not involved in the preparation and/or service of vegan meals at Western Illinois nor was he involved in the accommodation of dietary modifications for religious holidays or ceremonies. (Defs.' Ex. B; Fluckey Aff., ¶ 15.)
24. In response to complaints brought by Plaintiff against Defendant Bolton for staff misconduct alleged to have occurred on January 25, 2006, Lieutenant Steven Ashcraft interviewed an inmate witness and Defendant Bolton. (Defs.' Ex. D; Ashcraft Aff., ¶ 2.) Based on these interviews and Plaintiff's grievance on this matter, there was insufficient evidence to support Plaintiff's allegations that Defendant Bolton intentionally bumped into Plaintiff and did so with malice. (Defs.' Ex. D; Ashcraft Aff., ¶ 2.) Lieutenant Ashcraft concluded that further inquiry and/or investigation was not warranted. (Defs.' Ex. D; Ashcraft Aff., ¶ 2.)
25. Plaintiff was provided with a nutritious vegan diet from the time he was approved to receive a vegan diet until the time he was transferred to another facility. (Defs.' Ex. B; Fluckey Aff., ¶ 4.)
26. Plaintiff did not appeal any grievances complaining about the actions or inactions of either Defendant Griswold or Defendant Twaddell for the period of July 2005, through May 2007, in accordance with departmental rules. (Defs.' Ex. F; Anderson Aff., ¶ 8.)
27. Defendants Himpsl, Bolton, White, Oeser, and Eichelberger were employed as Correctional Food Service Supervisors for the times relevant to this action. (Ct. Doc. 10, p. 2.)
28. The policies governing accommodation of religious diets to inmates apply to all inmates regardless of race, religion, or culture. (Defs.' Ex. C; Twaddell Aff., ¶¶ 3-7.)

**Discussion and Conclusion**

The defendants have not substantially burdened the plaintiff's observation of his religion, nor have they subjected the plaintiff to any actionable discrimination. To constitute a violation of the Free Exercise Clause, the government must place a "substantial burden on the observation of a central religious belief or practice." *Wisconsin v. Yoder*, 406 U.S. 205, 220-21 (1972). It is well established that inmates have the right to freely exercise their religious beliefs. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). (Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion."). In order for a plaintiff to prevail on an equal protection claim under 42 U.S.C. §1983, he must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly as an undefinable group of individuals. *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216 1220 (7th Cir. 1994). Plaintiff must further show that any deprivation was based on an unjustifiable standard such as race, religion, or other arbitrary classification. *Vukandinovich v. Bartels*, 853 F.2d 1387 (7th Cir., 1988); *Government of the Virgin Island v. Harrigan*, 791 F.2d 34 (3rd Cir., 1988). Simply receiving different or unfair treatment is not enough to raise an equal protection violation. *Huebschen v. Dep't of Health and Social Services*, 716 F.2d 1167, 1171 (7th Cir. 1983). The complaint must allege the treatment received was intentional and based on Plaintiff being a member of an identifiable class to the exclusion of all others. *Id.*

The Department has promulgated regulations pertaining to the exercise of an inmate's religion, including the provision of religious diets within the institution. Specifically, "[c]ommitted persons shall be permitted to abstain from any foods the consumption of which violates their required religious tenets." Ill. Admin. Code. tit. 20, § 425.70(a). The policies governing accommodation of religious diets apply to all inmates regardless of race, religion, or culture. (Undisputed Material Fact No. 28.) Plaintiff's complaints about the administration of the vegan diet at Western Illinois fall into five categories: (i) that he received inadequate portions of food (Ct. Doc. #10, ¶¶ 5-7, 12-14, and 16); (ii) that staff substituted food items that were called for by the menu (Ct. Doc. #10, ¶¶ 2, 8, and 20); (iii) that the quality of the vegan diet was poor (Ct. Doc. #10, ¶¶ 9 and 19); (iv) that staff harassed and discriminated against Plaintiff on the basis of his religion (Ct. Doc. #10, ¶¶ 10-11 and 14-16); and (v) that he was provided insufficient dietary modifications for the Feast of Unleavened Bread (Ct. Doc. #10, ¶¶ 17-19).

The vegan menus used by Western Illinois are designed to ensure that recipients receive a nutritionally adequate vegan diet offering approximately 2300-2500 calories a day. (Undisputed Material Fact No. 8.) Portions and serving sizes are determined by Defendant Griswold, a Licensed Dietitian Nutritionist and registered dietitian. (Undisputed Material Facts No. 6 and 8.) Defendant Fluckey is not aware of any instances where dietary staff at Western Illinois intentionally withheld portions of food items called for by the menu without providing an appropriate substitute. (Undisputed Material Fact No. 19.) Contrary to Plaintiff's unsubstantiated suggestions otherwise, Defendants provided Plaintiff with a nutritious vegan diet from the time he was approved to receive a vegan diet until the time he was transferred to another facility. (Undisputed Material Fact No. 25.) Vegan meals are prepared by inmates under the supervision of Food Service Supervisors. (Undisputed Material Fact No. 11.) Although there is frequent turnover in the offender workforce, every effort is made to adequately train workers to ensure that meals are served in accordance with the vegan menus. (Undisputed Material Fact No. 12.) To the extent certain errors or omissions in the vegan menu became evident, those errors and omissions were immediately fixed to ensure that Plaintiff was provided a nutritionally adequate vegan diet. (Undisputed Material Fact No. 17.)

Plaintiff's complaints about the substitution of food items do not constitute a violation of his right to freely exercise his religion. Substitutions of food items that meet necessary dietary restrictions become necessary on occasion due to the unavailability of certain food items. (Undisputed Material Fact No. 9.) For a short time, rice milk was substituted for soy milk because the soy milk delivery was late. (Undisputed Material Fact No. 15.) However, rice milk and soy milk are both non-dairy alternatives for milk. (Undisputed Material Fact No. 14.) Further, Plaintiff's complaints about the substitution of crackers for vegan biscuits lack merit because crackers are appropriate substitutes for vegan biscuits. (Undisputed Material Fact No. 16.) There is no evidence to support Plaintiff's contention that dietary staff withheld food items without providing an appropriate substitute and the fact that substitutions were made in the first place in no way restricted Plaintiff's ability to adhere to the tenets of his religion.

The majority of Plaintiff's claims represent nothing more than petty complaints about the quality of meals. His complaints about the quality of meals served at Western Illinois fail. Complaints about cold and poorly prepared food do not implicate any constitutional rights. *Lunsford v. Bennett*, 17 F.3d 1574, 1579 (7 Cir. 1984). "A well balanced meal, containing the sufficient nutritional value to preserve health is all that is required." *Id.* Nevertheless, changes in the manner in which vegan diets were served were implemented in response to complaints by religious diet participants to improve the quality of meals. (Undisputed Material Fact. No. 20.) Curiously, Plaintiff attributes his health problems to Defendants' failure to serve peanut butter. (Defs.' Ex. G; Richardson Dep. Trans. dated Aug. 3, 2007, pp. 54-56.) However, peanut butter and peanuts are not required on a vegan diet. (Undisputed Material Fact No. 16.) Similarly, Plaintiff's complaints about the ill-effects of soy in vegan diets are entirely speculative. (See Ct. Doc. #10, ¶ 26.) Soy protein is a healthy alternative to meat, poultry, and other animal-based products. (Undisputed Material Fact No. 13.) Defendant Griswold is not aware of any specific research studies regarding dangers of soy consumption and particular health
issues associated with over-consumption of soy. (Undisputed Material Fact No. 13.)

Plaintiff's complaints about harassment by dietary staff also fail. Allegations that a prison official used threats and crude and derogatory language toward an inmate are not sufficient to state a claim under 42 U.S.C. § 1983. *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *Patton v. Przybylski*, 822 F.2d 697, 700 (7 Cir. 1987). Such crude and derogatory language, while unprofessional and deplorable, does not rise to the level of a constitutional claim. *Patton*, 822 F.2d at 700. "Standing alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." *DeWalt*, 224 F.3d at 612 (citations omitted). Nevertheless, Plaintiff's complaints about staff misconduct were declared to be unsubstantiated after an inquiry by Lieutenant Steven Ashcraft. (Undisputed Material Fact No. 24.) A plaintiff in a suit brought pursuant to 42 U.S.C. § 1983 cannot recover for de minimis violations. *Tesch v. County of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998). Plaintiff's allegations against Defendants Himpsl and Bolton as articulated in his complaint represent nothing more than de minimis violations.

Plaintiff's complaints about the dietary modifications for the Feast of Unleavened Bread also fail. Plaintiff was approved to participate in the Feast of Unleavened Bread of April 2006, and he was issued a call pass to eat with the other celebrants. (Undisputed Material Fact No. 21.) The basis of Plaintiff's complaint on this issue is the fact that Jewish inmates were provided a more desirable meal for their Passover Celebration. (Defs.' Ex. G; Richardson Dep. Trans. dated Aug. 3, 2007, pp. 46-47.) As previously stated, simply receiving different treatment is not enough to raise an equal protection violation. *Huebschen*, 716 F.2d at 1171. Nevertheless, Jewish inmates were provided meals that had been donated by Rabbi Binyomin Scheiman. (Undisputed Material Fact No. 22.) No such meals were donated for consumption by African Hebrew Israelite inmates who wished to participate in the Feast of Unleavened Bread. (Undisputed Material Fact No. 22.) To the extent Plaintiff complains about the quality of the meal provided for the Feast of Unleavened Bread, again complaints about poorly prepared food

do not implicate any constitutional rights. Therefore, Defendants are entitled to summary judgment on this claim.

Further, the plaintiff failed to exhaust administrative remedies with respect to Defendants Griswold and Twaddell. The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[no] action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a) (1996). One of the PLRA's primary purposes is to "enable prison officials to resolve complaints internally and to limit judicial intervention in the management of state and federal prisons." *Smith v. Zachary*, 255 F.3d 446, 449 (7th Cir. 2001). The PLRA exhaustion requirement requires proper exhaustion. *Woodford v. Ngo*, 126 S.Ct. 2378, 2387 (2006). Therefore, a prisoner must complete the administrative review process according to applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court. *Id.*; *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require")(emphasis added), cert. denied, 537 U.S. 949 (2002). Exhaustion is not left to the discretion of the district court, but
instead is mandatory. *Woodford*, 126 S.Ct. at 2382. A review of Administrative Review Board records indicates that Plaintiff did not appeal any grievances complaining about the actions or inactions of either Defendant Griswold or Defendant Twaddell for the period of July 2005, through May 2007, in accordance with departmental rules. (Undisputed Material Fact No. 26.) Plaintiff's failure to exhaust his administrative remedies with respect to Defendants Griswold and Twaddell impeded the prison administration's opportunity to address his complaints internally before initiation of this federal suit, contrary to one of the primary purposes of the PLRA. *See Smith*, 255 F.3d at 449. Therefore, Defendants Griswold and Twaddell are entitled to summary judgment in this matter.

Further, Defendants in a suit brought pursuant to 42 U.S.C. § 1983 can only be held liable for their individual wrongdoing. *Duckworth v. Franzen*, 780 F.2d 645, 650 (7th Cir. 1985). To be personally involved, defendants must act (or fail to act) with a deliberate or reckless disregard
of the plaintiff's constitutional rights or must direct or knowingly consent to the conduct alleged to constitute the violation. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985); *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Defendant Zimmerman was not personally involved in the preparation and/or service of vegan meals at Western Illinois nor was he personally involved in the accommodation of dietary modifications for religious holidays or ceremonies. (Undisputed Material Fact No. 23.) There is no basis for Plaintiffs allegation that Defendant Zimmerman even had any specific knowledge of Plaintiffs' complaints other than Plaintiff's own grievances which were all determined to have been unsubstantiated prior to Defendant Zimmerman's review. "Section 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). A supervisory official can be liable only for his own misconduct, not for the misconduct of individuals under his supervision. *Duckworth*, 780 F.2d at 650. Accordingly, Defendant Zimmerman is entitled to summary judgment in this matter.

Finally, there is no occasion to issue an injunction because of the foregoing reasons and because the plaintiff is no longer incarcerated at Western Illinois Correctional Center. Even when a constitutional violation is found, the power of federal courts to issue injunctive relief is circumscribed by the nature and extent of the constitutional violation. *Al-Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir. 1991). A federal court does not have jurisdiction to grant injunctive relief in the absence of an ongoing violation of federal law. *Id*. Plaintiff's lawsuit is based entirely on violations of his right to exercise his religion and violations of equal protection of the law alleged to have occurred while Plaintiff was incarcerated at Western Illinois. The court takes judicial notice that the Plaintiff is currently in custody at Pinckneyville Correctional Center. Therefore, Plaintiff is no longer in the custody and control of Defendants. Because Defendants could not comply with an injunction should it issue, Defendants are entitled to summary judgment in their favor.

**It is therefore ordered:**

1. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendant's summary judgment motion is granted [69]. The clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff. Any remaining matters are rendered moot and this case is terminated, with the parties to bear their own costs.**

2. **If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

**Enter this 29th day of September 2008.**

s\Harold A. Baker
_____
**Harold A. Baker
United States District Judge**